## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AMAZON CONTENT SERVICES LLC; COLUMBIA PICTURES INDUSTRIES, INC.; DISNEY ENTERPRISES, INC.; NETFLIX US, LLC; NETFLIX WORLDWIDE ENTERTAINMENT, LLC; PARAMOUNT PICTURES CORPORATION; SONY PICTURES ANIMATION INC.; SONY PICTURES TELEVISION INC.; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP; UNIVERSAL CITY STUDIOS LLC; and WARNER BROS. ENTERTAINMENT, INC.,

    Plaintiffs,

  vs.

BRANDON WEIBLEY; and Does 1-10 d/b/a beastmodebuilds.com and vonwik.com,

    Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

  Plaintiffs assert the following claims for direct and secondary copyright infringement under the Copyright Act (17 U.S.C. § 101 *et seq*.) against Brandon Weibley ("Weibley") and Does 1-10 ("Does," together with Weibley, "Defendants") responsible for the infringing streaming services Shrugs and Zing, operating at the domain vonwik.com, as well as the infringing streaming services

Beast Mode Live, BTV, Viking Media, and GreenWing Media, previously operating at the domain beastmodebuilds.com, which together cause irreparable harm to Plaintiffs. Plaintiffs allege the facts set forth below on personal knowledge as to themselves and on information and belief as to others.

## I.    INTRODUCTION

1.    Mass copyright infringement is a worldwide problem that seriously harms Plaintiffs, the U.S. economy, and economies around the globe. Plaintiffs and their affiliates are producers and distributors of filmed entertainment in the theatrical, television, and streaming industries, and they create many of the world's most popular and critically acclaimed movies and television shows. Beyond their inherent artistic and entertainment value, these copyrighted works contribute substantially to the U.S. economy. The American film and television industry alone supports 2.4 million jobs, pays out $186 billion in total wages, and comprises more than 122,000 businesses in all 50 states (92% of which are small businesses employing fewer than ten people).[1]

2.    Online piracy services and their operators pose a serious threat to this creative marketplace. In 2023, there were an estimated 185.6 billion visits to film

---

[1] *The American Motion Picture and Television Industry: Creating Jobs, Trading Around the World*, MOTION PICTURE ASSOCIATION (2023), https://www.motionpictures.org/wp-content/uploads/2023/01/MPA_US_Economic_Contribution_2021_Final.pdf.

and television piracy sites globally.[2] A U.S. Chamber of Commerce report estimates that global online theft of copyrighted movies and television shows cost the U.S. economy at least $29.2 billion in lost revenue each year.[3] That same study estimates that mass copyright infringement has reduced industry jobs by between 230,000 and 560,000 in just one year.[4]

3.    The Motion Picture Association ("MPA") and the Alliance for Creativity and Entertainment ("ACE") have supported Plaintiffs' investigation of this action. The MPA is a trade association that serves as a leading global advocate for the film, television, and streaming industries. Drawing on the MPA's anti-piracy resources, ACE is a global coalition of media and entertainment companies that is committed to protecting creativity and reducing piracy. Together, the MPA and ACE protect creators' intellectual property rights, including by developing public policy, investigating piracy, managing outreach to mass infringers to cease their illegal operations, and supporting civil enforcement actions against mass infringers if they refuse to cease operations.

---

[2] *2023 Movie & TV Piracy Trends Worldwide*, ALLIANCE FOR CREATIVITY AND ENTERTAINMENT (January 2025), https://www.alliance4creativity.com/wp-content/uploads/2025/01/WDWK-About-Movie-TV-Global-Pircy-Trends-092724.pdf

[3] DAVID BLACKBURN ET AL., U.S. CHAMBER OF COMMERCE, IMPACTS OF DIGITAL VIDEO PIRACY ON THE U.S. ECONOMY (June 2019), https://www.uschamber.com/assets/documents/Digital_Video_Piracy_June_2019.pdf.

[4] *Id.* at 14.

4.       Weibley is one such mass infringer. Specifically, Weibley and those acting in concert with him, including Does, operate an extensive and commercially-scaled network of internet protocol television ("IPTV") services that offer unauthorized access to thousands of live channels that stream Plaintiffs' copyrighted movies and television shows. Weibley makes money by selling subscriptions to his network of illegal services directly to the public, but he pays nothing to Plaintiffs for the copyrighted works he exploits.

5.       Weibley's mass infringement scheme is willful. Weibley profits from unauthorized exploitation of many of Plaintiffs' most popular movies and television series, including, for example, Warner Bros. Entertainment, Inc.'s ("Warner Bros.") 2023 film, *Barbie*, as seen in the below screenshot from one of Weibley's illicit IPTV services, Shrugs:



*Figure 1: Warner Bros.'* Barbie *illegally streaming on Shrugs*

6.    Weibley has an extensive history of illegally profiting from content theft and has engaged in mass infringement since at least 2017, when he registered the domain beastmodebuilds.com and began selling subscriptions to his infringing streaming services. Through that domain, Weibley operated and sold subscriptions to various illicit streaming services, including Beast Mode Live, BTV, Viking Media, and GreenWing Media (together, the "Initial Infringing Services"). Weibley provided subscribers to his Initial Infringing Services with access to hundreds of pirated television channels, including international content and live sports events.

7.    In December 2023, Plaintiffs contacted Weibley and demanded that he cease his infringing activities. Rather than comply, Weibley simply moved to a different domain, vonwik.com, and began offering his infringing services under the names Shrugs and Zing (together, the "Current Infringing Services").[5] Weibley now provides subscribers to the Current Infringing Services with access to more than 9,000 pirated channels, featuring Plaintiffs' television series and movies, as well as international content and live sports events. This is infringement of Plaintiffs' copyrighted works on a massive scale.

8.    Because Weibley has knowingly disregarded the obligation to pay for the content he illegally streams—and therefore does not abide by any restrictions

---

[5] The Initial Infringing Services and Current Infringing Services are collectively referred to as the "Infringing Services."

on use or pay any fees—he competes on unfair terms. Weibley has amassed a substantial amount of content on his Infringing Services by disregarding ownership rights or exclusive terms that apply. Because he pays nothing to obtain the content he steals, he charges consumers subscription fees well below what consumers would otherwise pay to access the same content through legitimately licensed distribution platforms. This harms Plaintiffs, their legitimate businesses models, and their legitimate distribution partners.

9.     Weibley knows he has no right to do any of this and that his activities amount to copyright infringement and unfair competition. Yet, he continues to infringe Plaintiffs' works with willful disregard for the illegality of his actions. Plaintiffs have made numerous attempts to contact Weibley since December 2023 in an effort to resolve this matter without court intervention. Weibley initially engaged counsel but has not responded to any of Plaintiffs' communications since June 2024, thus forcing Plaintiffs to file this lawsuit so they can protect their rights.

10.     Weibley and the Does' ongoing infringement diverts customers and revenue from Plaintiffs, and usurps Plaintiffs' right to control their copyrighted works and to determine the terms on which those works are provided to consumers. Without intervention, these harms will only grow as Weibley and those in concert with him, including Does, expand both their customer bases and their illegal content offerings.

## II.    PLAINTIFFS

11.    Plaintiff Amazon Content Services LLC ("Amazon") is a corporation duly organized under the laws of the State of Delaware with its principal place of business in Seattle, Washington. Amazon owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

12.    Plaintiff Columbia Pictures Industries, Inc. ("Columbia") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Culver City, California. Columbia owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

13.    Plaintiff Disney Enterprises, Inc. ("Disney") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California. Disney owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

14.    Plaintiff Netflix US, LLC ("Netflix") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Los Angeles, California. Netflix owns and controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

15.    Plaintiff Netflix Worldwide Entertainment, LLC ("Netflix Worldwide") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Los Angeles, California. Netflix

7

Worldwide owns and controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

16.    Plaintiff Paramount Pictures Corporation ("Paramount") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Los Angeles, California. Paramount owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

17.    Plaintiff Sony Pictures Animation Inc. ("SPA") is a corporation duly incorporated under the laws of the State of California with its principal place of business in Culver City, California. SPA owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

18.    Plaintiff Sony Pictures Television Inc. ("SPT") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Culver City, California. SPT owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

19.    Plaintiff Universal City Studios Productions LLLP ("Universal") is a limited liability limited partnership duly organized under the laws of the State of Delaware with its principal place of business in Universal City, California. Universal owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

20.    Plaintiff Universal City Studios LLC (formerly known as Universal

City Studios LLLP and Universal City Studios, Inc.) ("UCS") is a limited liability company duly organized under the laws of the State of Delaware with its principal place of business in Universal City, California. UCS owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

21.     Plaintiff Warner Bros. is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California. Warner Bros. owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

### III.    THE COPYRIGHTED WORKS

22.     Exhibit A to this Complaint contains a representative list of Plaintiffs' feature-length motion pictures and television shows, along with their registration numbers, the registered copyright owner(s), and the date of registration, that Weibley has infringed (the "Copyrighted Works").[6] Plaintiffs have timely obtained Certificates of Copyright Registration for their Copyrighted Works.

### IV.    DEFENDANTS

23.     Defendant Brandon Weibley is an individual residing in Mechanicsburg, Pennsylvania. The available evidence shows that Weibley owns, operates, or has previously operated the Infringing Services, including the Initial

---

[6] The Copyrighted Works include but are not limited to the representative list of infringed works set forth on Exhibit A. Plaintiffs will supplement this list as appropriate, such as, for example, to calculate damages.

Infringing Services, branded as Beast Mode Live, BTV, GreenWing Media, and Viking Media, and the Current Infringing Services, branded as Shrugs and Zing. Weibley previously used beastmodebuilds.com as the primary domain to offer the Initial Infringing Services, and currently uses vonwik.com as the primary domain to offer the Current Infringing Services. The Infringing Services provide illegal access to thousands of live channels that stream Plaintiffs' television shows and movies.

24.    On information and belief, Does 1-10 are individuals or entities previously or currently responsible for, or doing business as, the domains beastmodebuilds.com and vonwik.com (the "Infringing Domains") and working in active concert with each other and Weibley to knowingly and willfully offer for sale the Infringing Services through the Infringing Domains and selling the Infringing Services to residents in the United States, including in this District.

## V.    JURISDICTION & VENUE

25.    This Court has original subject matter jurisdiction over Plaintiffs' federal copyright claims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).

26.    Weibley is subject to personal jurisdiction because he resides in Mechanicsburg, Pennsylvania, and he directs his infringement of Plaintiffs' Copyrighted Works from this jurisdiction.

27.     Defendants are also subject to personal jurisdiction because Defendants know that their unauthorized exploitation of the Copyrighted Works harms Plaintiffs in Pennsylvania, they are entering into contracts with Pennsylvania residents, they are directing the infringing activity from this jurisdiction, and they are directing the illegal revenues obtained from the operation of the Infringing Services to this jurisdiction.

28.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1), 1400(a).

## VI.    FACTUAL BACKGROUND

### A.    Plaintiffs and Their Copyrighted Works

29.     Plaintiffs and/or their affiliates produce and distribute a significant portion of the world's most sought-after, critically acclaimed, and award-winning movies and television programs. Plaintiffs' ability to invest in and create new works, as well as to develop innovative ways to deliver content to consumers, depends upon the protection and enforcement of their rights under copyright law.

30.     Plaintiffs own or hold the exclusive U.S. rights to, among other things, reproduce, distribute, and publicly perform (including by means of streaming those works over the internet) the Copyrighted Works.

31.     Numerous legitimate channels exist for Plaintiffs' Copyrighted Works. Plaintiffs, themselves or through their affiliates, authorize the distribution and public performance of the Copyrighted Works in various formats and through

11

multiple distribution channels, including, by way of example: (a) through authorized cable and direct-to-home satellite services (including basic, premium, and "pay-per-view"); (b) through authorized internet video-on-demand services, including Amazon Prime, Disney+, Apple TV+, Google Play, Netflix, Paramount+, Hulu, and Peacock; (c) through authorized internet or over-the-top streaming services, including those offered by Hulu TV, Fubo TV, Sling TV, YouTube TV, and others; (d) for private home viewing on DVD, Blu-ray, and UHD discs; (e) for exhibition in theaters; (f) for pay television; and (g) for over-the-air broadcast television.

32.    Plaintiffs have not authorized Weibley to stream, distribute, publicly perform, or reproduce any of the Copyrighted Works, or to exercise any of Plaintiffs' other exclusive rights under the Copyright Act, 17 U.S.C. § 106.

**B.    Weibley's Long History of Infringing Activities**

33.    Plaintiffs' investigation has uncovered Weibley's long history of brazen disregard for copyright laws.

34.    On information and belief, Weibley has sold subscriptions to illicit

IPTV services since at least 2017, when he offered services under the name Beast

Mode Live.  The screenshot below depicts customer reviews of Weibley's

unauthorized streaming services that were available on beastmodebuilds.com's

homepage in 2017 and refer to Weibley by his first name:



*Figure 2: Screenshot of beastmodebuilds.com from 2017 featuring customer reviews*

35.    By August 2023, Weibley was using his beastmodebuilds.com domain

to sell subscriptions to infringing IPTV services BTV, GreenWing Media, and

Viking Media, which offered unauthorized access to hundreds of television

channels streaming Plaintiffs' television series and movies. The screenshot below depicts how Weibley advertised his infringing services on beastmodebuilds.com.



*Figure 3: The beastmodebuilds.com homepage in or around August 2023*

36.    The historical registration record for beastmodebuilds.com reflects that the domain was created in June 2017, and that Brandon Weibley was the registrant. As depicted in the below screen capture, the registration record also lists Weibley's former address, 47 Birch Drive, Hanover, Pennsylvania 17331, as well as his personal email address, bkweibley@gmail.com.

```
Domain Name: BEASTMODEBUILDS.COM
Registry Domain ID: 2130400761_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.launchpad.com
Registrar URL: LaunchPad.com
Updated Date: 2017-06-03T01:29:23Z
Creation Date: 2017-06-03T01:29:22Z
Registrar Registration Expiration Date: 2018-06-03T01:29:22Z
Registrar: Launchpad, Inc. (HostGator)
Registrar IANA ID: 955
Domain Status: clientTransferProhibited https://icann.org/epp#clientTransferProhibited
Registry Registrant ID: Not Available From Registry
Registrant Name: Brandon Weibley
Registrant Organization: None
Registrant Street: 47 Birch Drive
Registrant City: HANOVER
Registrant State/Province: PA
Registrant Postal Code: 17331
Registrant Country: US
Registrant Phone: +1.7179655294
```

*Figure 4: Historical Whois record identifying Weibley as the registrant of beastmodebuilds.com*

37.    Through at least early 2024, Weibley sold subscription packages to BTV, GreenWing Media, and Viking Media for between $13 per month and $120 per year. As depicted below, Weibley's invoices directed his customers to send their subscription payments to the CashApp username "$BeastModeBuilds3."



*Figure 5: Subscription invoice for Weibley's BTV service*

38.    In an attempt to conceal the purpose of subscribers' payments, Weibley's invoices warned subscribers not to refer to the name or nature of his services when making payment: "In the [payment] notes type the invoice # you are paying, NOTHING ELSE. We are serious, if you type anything else in the notes like 'Beast TV, IPTV, Live TV, or anything else …' your payment will be declined and you will need to correct and resubmit."

39.    Although Weibley omitted his name and contact information on the invoices, his email address, bkweibley@gmail.com, was included in the invoices' source code. In addition, as depicted below, CashApp receipts for subscription payments made to the username $BeastModeBuilds3 revealed that the CashApp account belonged to Weibley.



*Figure 6: CashApp receipt identifying Weibley as the recipient of subscription payments*

40.    After purchasing a subscription, Weibley provided his customers with instructions for accessing his illicit content through a third-party IPTV media player that could be downloaded directly to mobile devices, computers, and smart TVs. Weibley also responded to subscribers' support tickets submitted on beastmodebuilds.com. Weibley's username for responding to support tickets was "BigGainz," which is similar to the alias "Gainz717" that Weibley has used across his numerous social media accounts, including Facebook, Instagram, Snapchat, YouTube, and TikTok. The screen capture below depicts Weibley using the alias "Big Gainz" to respond to a support ticket.



*Figure 7: Screenshot reflecting a beastmodebuilds.com support ticket*

41.    Through the Initial Infringing Services (Beast Mode Live, BTV, GreenWing Media, and Viking Media), Weibley violated Plaintiffs' rights in the

Copyrighted Works on a massive scale. Between August 2022 and July 2023, for example, Weibley's beastmodebuilds.com domain received nearly 230,000 visits, with an average of almost 20,000 monthly visitors. These figures substantially underestimate the true extent of Weibley's mass infringement because Weibley provides access to his illicit content through third-party IPTV players. Weibley's subscribers, therefore, only need to visit the Infringing Domains when they first make a purchase or to renew their subscriptions, rather than each time they illegally access the Copyrighted Works.

### C.    Plaintiffs Attempted to Resolve These Issues Without Court Intervention, But Weibley Refused to Cooperate

42.    In December 2023, Plaintiffs contacted Weibley and demanded that he cease his infringing activities. Over the next two months, Weibley ignored Plaintiffs' letters, emails, phone calls, and voicemails while continuing to operate BTV, GreenWing Media, and Viking Media on his beastmodebuilds.com domain.

43.    On February 21, 2024, Weibley finally responded to Plaintiffs' repeated outreach attempts and informed Plaintiffs' counsel that his lawyer would be in contact. Although Weibley's attorney did engage with Plaintiffs' counsel on these issues in March 2024, Weibley has continued infringing Plaintiffs' Copyrighted Works. Plaintiffs' further attempts to engage on these issues and reach a resolution have been ignored since June 2024.

**D.    Weibley Begins Operating the Current Infringing Services, Which Offer Access to Significantly More Unauthorized Content**

44.    In mid-February 2024, Plaintiffs' investigation revealed that Weibley's beastmodebuilds.com domain was redirecting to a new domain, vonwik.com, where customers could purchase subscriptions to the Current Infringing Services, Shrugs and Zing. Weibley offered subscription plans as low as $15 a month for these services, which provided unauthorized access to thousands of television channels. After establishing the vonwik.com domain, Weibley disabled the beastmodebuilds.com domain in or around late February 2024.

45.    On February 26, 2024, Weibley used his "Big Gainz" alias to inform subscribers that "Beast Mode" was "shutting down." In the message, Weibley provided subscribers with instructions for registering on the vonwik.com domain, which would allow them to "get moved over seamlessly" to the Current Infringing Services. Weibley also instructed subscribers to submit a support ticket stating that the subscriber was "Switching over to Vonwik." A screenshot of Weibley's message to his subscribers is depicted on the following page.



*Figure 8: Weibley's message to subscribers about switching to the Current Infringing Services*

46.     Since February 2024, Weibley has continued operating the

vonwik.com domain, through which he still offers the Current Infringing Services.

Below is a screenshot from vonwik.com's homepage showing several of Weibley's

subscription packages for his Shrugs service.



*Figure 9: Shrugs subscription packages listed on vonwik.com*

47.     Combined, Weibley's Current Infringing Services offer more than 9,000 live channels. This vast unlicensed IPTV scheme provides unauthorized access to thousands of Plaintiffs' Copyrighted Works, a small representative sample of which are listed in Exhibit A to this Complaint.

48.     The Current Infringing Services' channels include live television channels, such as (1) Paramount's Showtime, Nickelodeon, Comedy Central, BET, and Paramount Network; (2) Warner Bros.' Cinemax, HBO Zone, HBO Comedy, HBO Signature, CNN, TLC, and HGTV; (3) Disney's Disney Channel, Disney Jr., FX, NatGeo, Lifetime, The History Channel, ABC, and ESPN; and (4) Universal's NBC, CNBC, Telemundo, USA Network, and Bravo.

49.     Weibley's live television channels are streamed contemporaneously with the original source of the telecast. For example, television programs airing on channels such as A&E and BBC News America through an authorized source (e.g., a cable operator or satellite television provider) also appear on Weibley's Current Infringing Services, where the channels are streamed in high definition and with little to no delay. This contemporaneous streaming of the television channels enables Weibley's subscribers to view new releases and exclusive programming simultaneously with the original telecast.

50.    Subscribers can access any of Weibley's thousands of unauthorized channels by searching across various categories, including premium channels and sports programming. Below is a screenshot depicting the Shrugs channel interface.



*Figure 10: Screenshot from Shrugs' library of television channels*

51.    Like Shrugs, subscribers to Zing can access channels by category, or they can search across all available channels for any movie, show, or sporting event. Weibley's Zing service includes thousands of additional channels not available on Shrugs, and also provides channels that, on information and belief, stream popular television shows and movies in a continuous loop. For instance, if a subscriber is interested in the popular sitcom *Friends*, a search within Zing could direct them to a channel where episodes of the series are played continuously.

52.    Among the titles that Weibley offers through the Current Infringing Services are popular movie releases, including Disney's *Moana*, Universal's

*Oppenheimer*, and Paramount's *Forest Gump*. The screen captures below depict

these popular titles on Weibley's Shrugs service.



*Figures 11-13: Disney's* Moana, *Universal's* Oppenheimer, *and Paramount's* Forest Gump *illegally streaming on Shrugs*

53.     Weibley is liable for the mass-scale infringement described herein. In addition to operating the Current Infringing Services, on information and belief, Weibley maintains control over the beastmodebuilds.com domain, and could resume offering the Initial Infringing Services at that domain (or at additional domains) at any time.

## VII.   CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF
***(By All Plaintiffs Against All Defendants)***
**Direct Copyright Infringement – 17 U.S.C. § 501**

54.     Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 53, inclusive.

55.     Under Section 106 of the Copyright Act, Plaintiffs own the exclusive rights, including, among others, to reproduce and publicly perform their Copyrighted Works.

56.     Plaintiffs have not authorized Defendants to exercise any of Plaintiffs' exclusive rights.

57.     Defendants have infringed and continue to infringe Plaintiffs' Copyrighted Works by violating Plaintiffs' exclusive rights to reproduce the Copyrighted Works. Without Plaintiffs' authorization, Defendants make copies of Plaintiffs' Copyrighted Works available through a massive live channel library that can be streamed through their Infringing Services. This infringement includes

those works contained on the representative list of infringed works attached at Exhibit A.

58.    Defendants have infringed and continue to infringe Plaintiffs' Copyrighted Works by violating Plaintiffs' exclusive rights to publicly perform the Copyrighted Works. Without Plaintiffs' authorization, Defendants publicly perform Plaintiffs' Copyrighted Works, including those works contained on the representative list of infringed works attached at Exhibit A, by transmitting performances of the Copyrighted Works over the internet to subscribers of the Infringing Services.

59.    Defendants' acts of infringement are willful, deliberate, and committed with prior notice and knowledge of Plaintiffs' Copyrighted Works. Each Defendant willfully, wantonly, and in conscious disregard and intentional indifference to the rights of Plaintiffs made and distributed, caused to be made and distributed, and aided, abetted, contributed to, and participated in the unauthorized making and distribution of the Infringing Services in the United States, including in this District.

60.    Each Defendant either knew, or should have reasonably known, that Plaintiffs' Copyrighted Works were protected by copyright and that their actions infringed on Plaintiffs' copyrights. Each Defendant continues to infringe upon Plaintiffs' rights in and to the various Copyrighted Works.

61.     As a direct and proximate result of the infringements by Defendants, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

62.     Pursuant to 17 U.S.C. § 503, and at their own election, Plaintiffs are entitled to an order that Defendants' infringing goods and articles be impounded and destroyed.

63.     At their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per infringed work by virtue of Defendants' willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

64.     Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

65.     As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in the Copyrighted Works. Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502 to prevent or restrain infringement of the copyrights, including enjoining any use or exploitation by Defendants of their Infringing Services.

## SECOND CLAIM FOR RELIEF
### (*By All Plaintiffs Against All Defendants*)
### Contributory Copyright Infringement

66.    Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 53, inclusive.

67.    With respect to all incidents of infringement as to which Defendants claim that third parties, and not Defendants themselves, are directly liable for infringing Plaintiffs' exclusive rights under the Copyright Act, Defendants are knowingly and materially contributing to such infringement.

68.    Defendants have actual knowledge of infringement by third-party subscribers. Defendants systematically offer for sale thousands of live television channels, movies, and television series containing Copyrighted Works that can only be lawfully accessed through a limited number of legitimate services, in specific geographic regions, and in specific content packages. Defendants know that third parties are not authorized to reproduce Plaintiffs' Copyrighted Works and are not authorized to publicly perform Copyrighted Works by streaming these channels. Still, Defendants sell access to these streams to their own subscribers. Defendants also facilitate access to the streams through their Infringing Domains, which, as explained above, permit users to purchase subscriptions and access a third-party web IPTV player through which subscribers can then stream content. Defendants know, from among other sources Weibley's correspondence with

Plaintiffs, that their subscribers have no authorization to receive the streams of the Copyrighted Works he provides to those subscribers.

69.    Defendants materially contribute to the infringement of the third-party subscribers. Defendants configure and promote the use of the Infringing Services to connect subscribers to unauthorized streams of Plaintiffs' Copyrighted Works. To the extent any of the Copyrighted Works available through the Infringing Services have been uploaded to the internet through third parties, the third parties behind these unauthorized streams control the facilities and equipment used to copy and stream performances of Plaintiffs' Copyrighted Works. Those third parties directly infringe Plaintiffs' exclusive reproduction and public performance rights by copying, redistributing, and publicly performing the Copyrighted Works without Plaintiffs' authorization. By operating the Infringing Services and supplying the IPTV content, Defendants facilitate, encourage, and enable the direct infringement of Plaintiffs' Copyrighted Works.

70.    If Defendants transferred the Infringing Services and/or Infringing Domains to third parties, Defendants also materially contributed to the infringement of those third parties through their illicit transfer. Defendants further contributed to the infringement by shielding the identities of Does from Plaintiffs.

71.    Defendants' knowing and material contribution to the infringement of Plaintiffs' rights in each Copyrighted Work constitutes a separate and distinct act of infringement.

72.     Defendants' knowing and material contribution to the infringement of the Copyrighted Works is willful, intentional, purposeful, and in utter disregard of Plaintiffs' rights.

73.     As a direct and proximate result of Defendants' infringement, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

74.     Pursuant to 17 U.S.C. § 503 and at their election, Plaintiffs are entitled to an order that Defendants' infringing goods and articles be impounded and destroyed.

75.     At their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per infringed work, by virtue of Defendants' willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

76.     Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

77.     As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in the Copyrighted Works. Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502, including enjoining any use or exploitation by Defendants of their Infringing Services.

## THIRD CLAIM FOR RELIEF
### (*By All Plaintiffs Against All Defendants*)
### Inducement of Copyright Infringement

78.    Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 53, inclusive.

79.    To the extent Defendants claim third parties are exercising Plaintiffs' exclusive reproduction, and public performance rights under the Copyright Act, Defendants intentionally induce such infringement by supplying and promoting the use of the Infringing Services, which has the singular function of connecting Defendants' customers to unauthorized online sources that copy and stream Plaintiffs' Copyrighted Works, and by actively inducing, encouraging, and promoting the use of the Infringing Services for copyright infringement.

80.    Defendants' intentional and knowing inducement of the infringement of each Copyrighted Work constitutes a separate and distinct act of infringement.

81.    Defendants' inducement of the infringement of the Copyrighted Works is willful, intentional, purposeful, and in disregard of and with indifference to Plaintiffs' rights. Defendants also know that the conduct by them and the third parties is infringing.

82.    Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

83.    As a direct and proximate result of the infringement that Defendants intentionally induce, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

84.    Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per infringed work, by virtue of Defendants' willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

85.    As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in the Copyrighted Works. Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502, including enjoining any use or exploitation by Defendants of their Infringing Services.

86.    Pursuant to 17 U.S.C. § 503 and at their election, Plaintiffs are entitled to an order that Defendants' infringing goods and articles be impounded and destroyed.

## VIII. JURY DEMAND

87.    Pursuant to Rule 38(b), Plaintiffs demand a trial by jury on all claims, issues, and damages so triable.

## IX.    REQUEST FOR RELIEF

For the foregoing reasons, Plaintiffs respectfully request judgment against Defendants for the following relief:

1.    For injunctive relief (a) enjoining Defendants and their officers, agents, servants, employees, attorneys, and all persons acting in active concert or participation with them, from publicly performing, reproducing, distributing, or otherwise infringing in any manner (including without limitation by materially contributing to or intentionally inducing the infringement of) any of Plaintiffs' rights under the Copyright Act in any of the Copyrighted Works, and any other copyright material owned by Plaintiffs, and other works that Defendants may add to the Infringing Services in the future, including without limitation by publicly performing or reproducing those Copyrighted Works or other copyright material owned by Plaintiffs, or by distributing any software or providing any service or device that does or facilitates any of the foregoing illegitimate acts; and (b) impounding hardware in Defendants' possession, custody, or control, and any and all documents or other records in Defendants' possession, custody, or control relating to their direct and secondary infringement of the Copyrighted Works, and other copyright material owned by Plaintiffs.

2.    For entry of an injunction enjoining the domain name registrars and registries for the Infringing Domains, as well as all others who receive notice of the

Court's order, from allowing the Infringing Domains to be modified, sold, transferred to another owner (other than Plaintiffs), or deleted.

3.    For entry of an order requiring the domain name registrars and registries for the Infringing Domains, and any additional domain names found to be associated with Defendants' operation of the Infringing Services, to transfer to a registrar to be appointed by Plaintiffs to re-register the domain names in Plaintiffs' names, or the name(s) of their designee(s), and under Plaintiffs' ownership.

4.    For entry of an order requiring hosting service providers of websites associated with the Infringing Domains to suspend any services to such websites and place an administrative lock on the websites to prevent accessing and downloading the websites' content or transferring the websites' content to another domain name or hosting service.

5.    For entry of an order requiring that Defendants' infringing goods and articles be impounded and destroyed pursuant to 17 U.S.C. § 503.

6.    For Plaintiffs' damages and Defendants' profits in such amount as may be found; alternatively, at Plaintiffs' election, for maximum statutory damages or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

7.    For an accounting, the imposition of a constructive trust, restitution of Defendants' unlawful proceeds from copyright infringement, and damages according to proof.

8.     For a declaration that Defendants' activities as alleged herein constitute direct and secondary copyright infringement of Plaintiffs' exclusive rights under copyright in violation of 17 U.S.C. § 106.

9.     For prejudgment interest according to law.

10.     For Plaintiffs' attorneys' fees and full costs incurred in this action pursuant to 17 U.S.C. § 505.

11.     For all such further and additional relief, in law or in equity, to which Plaintiffs may be entitled or which the Court deems just and proper.

DATED: March 4, 2025                Respectfully submitted,


By:    /s/  Barry L. Cohen
          Barry L. Cohen


Barry L. Cohen (PA Bar No. 68864)
ROYER, COOPER, COHEN, BRAUNFELD
Three Logan Square
1717 Arch Street, 47th Floor
Philadelphia, Pennsylvania 19103
Telephone: (484) 362 -2628
bcohen@rccblaw.com

Scott R. Commerson (CA Bar No. 227460)
Sean M. Sullivan (CA Bar No. 229104)
Katelyn A. Feliciano (CA Bar No. 350385)
*(Motion for Pro Hac Vice Admission to be filed)*
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California  90071-3487
Telephone:  (213) 633-6800
Fax:  (213) 633-6899
scottcommerson@dwt.com
seansullivan@dwt.com
katelynfeliciano@dwt.com

L. Danielle Toaltoan (NY Bar No. 5074315),
*(Motion for Pro Hac Vice Admission to be filed)*
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
Telephone:  (212) 489-8230
danielletoaltoan@dwt.com

*Attorneys for Plaintiffs*