## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AMAZON CONTENT SERVICES LLC,:    Civil No. 1:25-CV-00388
*et al.*,    :

       Plaintiffs,    :

       v.    :

BRANDON WEIBLEY, *et al.*,    :

       Defendants.    :    Judge Jennifer P. Wilson

## <u>MEMORANDUM</u>

Plaintiffs, a group[1] of media and entertainment companies, learned that

Brandon Weibley ("Weibley") and Does 1–10, doing business as

beastmodebuilds.com and vonwik.com, ("Defendants") run a subscription-based

streaming service offering users cheap, unauthorized access to thousands of movies

and television shows Plaintiffs own.  (Doc. 1, ¶¶ 1–53.)  So Plaintiffs sued

Defendants for copyright infringement, contributory copyright infringement, and

inducement of copyright infringement.  (*Id.* ¶¶ 54–86.)

Plaintiffs properly served the complaint on Weibley, Doc. 6, p. 1, but

Weibley neither answered the complaint nor participated in this litigation in any

---

[1] The Plaintiffs are Amazon Content Services LLC; Columbia Pictures Industries, Inc.; Disney Enterprises, Inc.; Netflix US, LLC; Netflix Worldwide Entertainment, LLC; Paramount Pictures Corporation; Sony Pictures Animation Inc.; Sony Pictures Television Inc.; Universal City Studios Productions LLLP; Universal City Studios LLC; and Warner Bros. Entertainment, Inc. The court refers to them, collectively, as "Plaintiffs."

1

way.  (*See* Doc. 23, pp. 11–12.)[2]  Plaintiffs moved for default judgment against Weibley after securing an entry of default, and that motion is before the court.  (Doc. 22.)  The court will grant the motion and enter default judgment against Weibley for the reasons explained herein.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs and their affiliates produce movies and television programs.  (Doc. 1, ¶ 29.)  They "own or hold the exclusive U.S. rights to, among other things, reproduce, distribute, and publicly perform (including by means of streaming those works over the internet)" a list of movies and television programs they allege Weibley "has infringed" ("the copyrighted works").  (*Id.* ¶¶ 22, 30; *see also* Doc. 1-2, pp. 1–4 (listing the copyrighted works).)[3]  They authorize "the distribution and public performance" of the copyrighted works through various formats.  (*Id.* ¶ 31.)

Weibley lives in Mechanicsburg, Pennsylvania.  (*Id.* ¶ 23.)  Plaintiffs allege that Weibley[4] owns, operates, or previously operated a series of internet protocol

---

[2] For ease of reference, the court uses the page number from the CM/ECF header.

[3] Exhibit A to Plaintiffs' complaint lists the titles of the copyrighted works, which company registered each copyright, the registration number of the copyright, and the registration date of the copyright.  (Doc. 1–2 pp. 1–4.)

[4] Plaintiffs allege that Does 1–10 act "in concert" with Weibley.  (Doc. 1, ¶ 4.)  They claim that Does 1–10 "are individuals or entities previously or currently responsible for, or doing business as, the domains beastmodebuilds.com and vonwik.com (the 'Infringing Domains') and working in active concert with each other and Weibley to knowingly and willfully offer for sale the Infringing Services through the Infringing Domains and selling the Infringing Services to residents in the United States, including in this District."  (*Id.* ¶ 24.)

television ("IPTV") services that "offer unauthorized access to thousands of live channels that stream Plaintiffs' copyrighted movies and television shows."  (*Id.* ¶¶ 4, 23.)  Plaintiffs allege that they have not authorized Weibley to exercise any of their rights to the copyrighted works granted by 17 U.S.C. § 106.  (*Id.* ¶ 32.) Plaintiffs allege Weibley sold subscriptions to the following unauthorized IPTV services: Beast Mode Live, BTV, Viking Media, GreenWing Media, Shrugs, and Zing (collectively, "the infringing services").  (*Id.* ¶ 23.)

Weibley has sold subscriptions to the infringing services since at least 2017. (*Id.* ¶¶ 34–36.)  At that point, he "offered services under the name Beast Mode Live" and advertised or managed that service through the web domain "beastmodebuilds.com."[5]  (*Id.* ¶ 34.)  By 2023, he was also selling subscriptions to BTV, GreenWing Media, and Viking Media on beastmodebuilds.com.  (*Id.* ¶ 35.) Plaintiffs allege that he used those services to violate their rights in the copyrighted works "on a massive scale."  (*Id.* ¶ 41.)

Weibley's invoices directed customers to send payment for their subscriptions to the services to his CashApp account, and Plaintiffs allege he tried to "conceal the purpose of subscribers' payments . . . ."  (*Id.* ¶¶ 38–39.)  Plaintiffs also aver that Weibley provided instructions for his subscribers to access the

---

[5] Plaintiffs allege Weibley created and registered the beastmodebuilds.com domain.  (Doc. 1, ¶ 36.)

copyrighted works through "a third-party IPTV media player that could be downloaded directly to mobile devices, computers, and smart TVs," and that he responded to support tickets submitted through beastmodebuilds.com. (*Id.* ¶ 40.) Plaintiffs claim that between August 2022 and July 2023, beastmodebuilds.com received hundreds of thousands of "visits." (*Id.* ¶ 41.) But subscribers only visited beastmodebuilds.com to make a purchase or renew a subscription; they accessed the copyright works and "illicit content" through third-party IPTV players Weibley provided. (*Id.*)

Plaintiffs contacted Weibley in December 2023 and demanded that he "cease his infringing activities." (*Id.* ¶ 42.) Weibley ignored them for two months and continued to operate BTV, GreenWing Media, and Viking Media on beastmodebuilds.com. (*Id.* ¶¶ 42–43.) He responded to Plaintiffs in February 2024 and told Plaintiffs' counsel "that his lawyer would be in contact." (*Id.* ¶ 43.) Weibley's counsel corresponded with Plaintiffs' counsel in March 2024, but since June 2024, Weibley has again ignored Plaintiffs' attempts to resolve the issues presented in the complaint. (*Id.*)

Weibley disabled the beastmodebuilds.com domain in February 2024 and redirected users to a new domain called vonwik.com. (*Id.* ¶ 44.) On vonwik, customers could purchase subscriptions to a new set of infringing services called Shrugs and Zing. (*Id.*) Weibley sent subscribers who had previously registered for

BTV, GreenWing Media, and Viking Media on beastmodebuilds.com instructions explaining how to register for Shrugs or Zing on vonwik.com.  (*Id.* ¶ 45.) Plaintiffs claim Weibley still operates the vonwik.com domain and sells subscriptions to Shrugs and Zing.  (*Id.* ¶ 46.)  Plaintiffs claim that a subscription to Weibley's services "provides unauthorized access to thousands of Plaintiffs' Copyrighted Works . . . , " including the copyrighted works, and contemporaneously-streamed television channels.  (*Id.* ¶¶ 47–52.)  Plaintiffs aver that Weibley "maintains control over the beastmodebuilds.com domain and could resume offering the Initial Infringing Services at that domain (or at additional domains) at any time."  (*Id.* ¶ 53.)

Plaintiffs sued Defendants on March 4, 2025.  (Doc. 1.)  They bring a copyright infringement claim, *Id.* ¶¶ 54–65, a contributory copyright infringement claim, *Id.* ¶¶ 66–77, and an inducement of copyright infringement claim, *Id.* ¶¶ 78–86, against all Defendants.  They seek various forms of injunctive, compensatory, and declarative relief.  (*Id.* ¶¶ 1–11.)[6]

Plaintiffs filed an affidavit of service confirming that they had personally served Weibley with the summons and complaint on April 7, 2025.  (Doc. 6.) Weibley did not answer the complaint or otherwise participate in the litigation of

---

[6] Plaintiffs restarted their paragraph numbering in the "Request for Relief" section of their complaint, so these paragraph citations refer to that section, specifically.

5

this case.  So, Plaintiffs filed an application for an entry of default against Weibley only, pursuant to Federal Rule of Civil Procedure 55(a) on May 21, 2025. (Doc. 15.)  The Clerk of Court entered an entry of default against Weibley on May 22, 2025.  (Doc. 17.)

Plaintiffs moved for default judgment against Weibley on October 9, 2025, and filed a brief in support of that motion the next day.  (Docs. 22, 23.)[7]  Weibley did not respond to Plaintiffs' motion.  Therefore, Plaintiffs' motion for default judgment is ripe for review.

## JURISDICTION AND VENUE

The court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 because the case arises under the laws of the United States.  The court has personal jurisdiction over Weibley because, accepting the allegations of the amended complaint as true, he resides[8] in Mechanicsburg and "directs his

---

[7] Plaintiffs did not move for entry of default judgment against the other defendants.

[8] Pennsylvania's longarm statute, which authorizes the exercise of jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States," 42 Pa. Cons. Stat. § 5322(b), governs this court's jurisdiction over Weibley.  *Aldossari ex rel Aldossari v. Ripp*, 49 F.4th 236, 257 (3d Cir. 2022).  Although Plaintiffs do not include allegations about Weibley's domicile in their complaint, they allege that he directs his control of the infringing services from the Middle District of Pennsylvania, Doc. 1, ¶ 26, so the court finds that he purposefully directed his infringing activities toward Pennsylvania by operating the website and conducting business from this state, and therefore it may exercise specific personal jurisdiction over him without offending the norms of fair play and substantial justice.  *Aldossari*, 49 F.4th at 257 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)); *see Broad. Music, Inc. v. 3817 Pac. LLC*, No. 23-CV-22782, 2024 WL 3451885, at *3 (D.N.J. July 18, 2024) (finding, in the default judgment context, that a defendant who was a

infringement of Plaintiffs' Copyrighted Works from this jurisdiction," which is the Middle District of Pennsylvania, and he was personally served pursuant to Federal Rule of Civil Procedure 4. (Doc. 1, ¶¶ 23, 26; Doc. 6, p. 1); *see* Fed. R. Civ. P. 4k(1). Venue is proper in this court because Weibley resides in the Middle District of Pennsylvania. 28 U.S.C. § 1391(b)(1); (Doc. 1, ¶ 23.)

### STANDARD OF REVIEW

The court may enter a default judgment following an entry of default. Fed. R. Civ. P. 55(b)(2). Parties seeking a default judgment are not automatically entitled to it, and entering a default judgment is "left primarily to the discretion of the district court." *Bugg v. Just Wing It, LLC*, No. 18-cv-02399, 2020 WL 1675953, at *2 (M.D. Pa. Apr. 6, 2020) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)); *see BMO Harris Bank N.A. v. JRD Trucking, LLC*, No. 3:21-cv-02161, 2022 WL 18635326, at *3 (M.D. Pa. Sept. 13, 2022).

The court considers three factors in determining whether to enter a default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). In analyzing these factors, "the court proceeds knowing 'the factual

---

member of the LLC that operated, maintained, and controlled the New Jersey establishment at issue and who managed that establishment had purposefully directed his conduct towards the state of New Jersey, so the court could exercise specific jurisdiction over him).

allegations in the complaint are treated as proven, except for the contentions related to damages.'" *Laughing Smith, LLC v. PPNC, Inc.*, No. 1:23-CV-01285, 2024 WL 4253346, at *2 (M.D. Pa. Sept. 20, 2024) (quoting *Bugg*, 2020 WL 1675953, at *3). And the court must ensure that the "unchallenged facts" of the complaint "constitute a legitimate cause of action." *United States v. Kline*, No. 18-cv-02174, 2019 WL 1354150, at *2 (M.D. Pa. Mar. 26, 2019) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2688 (3d ed. 2007)).

## DISCUSSION

The court analyzes the *Chamberlain* factors and then determines whether Plaintiffs adequately plead claims for copyright infringement, contributory copyright infringement, and inducement of copyright infringement against Weibley. 210 F.3d at 164; Doc. 1 ¶¶ 54–86. After that, it addresses damages and injunctive relief.

### A. The Chamberlain Factors Weigh in Favor of Entering Default Judgment Against Weibley.

Under the first *Chamberlain* factor, the court considers the prejudice Plaintiffs will suffer if the court declines to enter default judgment. 210 F.3d at 164. This factor weighs in Plaintiffs' favor because, as Plaintiffs note, without an entry of default judgment, "they will be unable to recover damages from [Weibley] or stop his infringing conduct, and therefore will lack any remedy." (Doc. 23, p.

13); *Adlife Mktg. & Commc'ns Co. v. Ad Post Graphics Media Mktg., Inc.*, 708 F. Supp. 3d 567, 573 (M.D. Pa. 2023) ("Absent the default judgment, Plaintiff will be faced with an indefinite, and possibly permanent, delay in the adjudication of the Copyright Infringement claim and is left with no alternative means to vindicate its claim against the defaulting parties, including obtaining the damages allegedly owed."); *Broad. Music, Inc. v. George Moore Enters., Inc.*, 184 F. Supp. 3d 166, 170 (W.D. Pa. 2016) ("Plaintiffs will suffer prejudice if default is denied because they will be unable to proceed with their action and because their copyrighted works may continue to be infringed.") (first quoting *Broad. Music, Inc. v. Kujo Long, LLC*, No. 1:14–CV–449, 2014 WL 4059711, at *2 (M.D. Pa. Aug. 14, 2014); and then quoting *Frank Music Corp. v. Emerson's Pub, Inc.*, No. 4:08-CV-0532, 2009 WL 744964, at *1 (M.D. Pa. Mar. 18, 2009)).

Second, Weibley did not file an answer or any responsive pleading to Plaintiffs' complaint, so he does not appear to have a litigable defense. *Prepared Food Photos, Inc. v. Burch Farms, Inc.*, No. 1:24-00346, 2026 WL 783719, at *3 (W.D. Pa. Mar. 19, 2026); *Laughing Smith*, 2024 WL 4253346, at *3; *Broad. Music*, 184 F. Supp. 3d at 170.

Third, the court finds that the delay is a result of Weibley's culpable conduct. Culpable conduct is conduct taken "willfully or in bad faith." *Chamberlain*, 201 F.3d at 164 (quoting *Gross v. Stereo Component Sys., Inc.*, 700

9

F.2d 120, 124 (3d Cir. 1983)).  "A presumption of bad faith arises when 'a defendant fails to respond to a complaint and offers no reason for its failure to engage in the action.'"  *Laughing Smith*, 2024 WL 4253346, at *3 (quoting *Bugg*, 2020 WL 1675953, at *5).  Plaintiffs properly served Weibley, Doc. 6, p. 1, but he neither responded to the complaint nor participated in this litigation in any way, even after he engaged an attorney to respond to Plaintiffs' initial communications. (Doc. 1, ¶ 43); *see Globe Turner, LLC v. ConversationPrints, LLC*, No. 24-6673, 2025 WL 2346883, at *7 (E.D. Pa. Aug. 13, 2025) ("The fact that an attorney purportedly representing [the defendant] has been in contact with [the plaintiff] about the lawsuit but has not entered an appearance or otherwise participated in the case may indicate culpability.") (citing *Thorn Flats, LLC v. BuildPro Constr. LLC*, No. 21-cv-5412, 2022 WL 1720014, at *3 (E.D. Pa. May 26, 2022)).  Therefore, the court finds the delay at issue is a result of Weibley's culpable conduct because he acted willfully and in bad faith.  *See Chamberlain*, 201 F.3d at 164.[9]

All three *Chamberlain* factors weigh in Plaintiffs' favor, so the court finds Plaintiffs are entitled to default judgment so long as they properly allege their

---

[9] Some courts consider the third *Chamberlain* factor neutral when "the defendant's motivations for not participating in the litigation are unclear . . . ."  *Globe Turner*, 2025 WL 2346883, at *7 (citing *Hartford Cas. Ins. Co. v. MRH Contractor, Inc.*, No. 23-cv-1567, 2024 WL 3904049, at *3 (E.D. Pa. Aug. 22, 2024)).  Even if the court took this approach, two of three *Chamberlain* factors would weigh in Plaintiffs' favor, and the court would still find that default judgment is appropriate.  *Chamberlain*, 210 F.3d at 164.

copyright infringement, contributory copyright infringement, and inducement of copyright infringement claims. *Adlife Mktg.*, 708 F. Supp. 3d at 573.

### B. Plaintiffs Adequately Plead Claims of Copyright Infringement, Contributory Copyright Infringement, and Inducement of Copyright Infringement Against Weibley.

Having found that the *Chamberlain* factors weigh in favor of granting Plaintiffs' motion for default judgment, the court now determines whether Plaintiffs have properly pleaded their claims of copyright infringement, Doc. 1, ¶¶ 54–65, contributory copyright infringement, *Id.* ¶¶ 66–77, and inducement of copyright infringement, *Id.* ¶¶ 78–86. The court finds that they have, so an entry of default judgment is appropriate.

### 1. Copyright Infringement

Plaintiffs first bring a copyright infringement claim against Weibley pursuant to 17 U.S.C. § 501. (Doc. 1, ¶¶ 54–65.) Copyright protection covers "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated . . ." including "motion pictures and other audiovisual works." 17 U.S.C. § 102(a), (a)(6). The owner of a copyright "has the exclusive rights to do and to authorize . . . in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, [the performance of] the copyrighted work publicly . . . ." *Id.* § 106(4).

11

Copyright owners also have the exclusive right to "distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending . . . ." *Id.* § 106(3).

To state a copyright infringement claim, Plaintiffs must allege (1) that they own a valid copyright of a specific work and (2) that Weibley copied "constituent elements" of that work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 548 (1985)).

A certificate of copyright registration is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate" so long as it is made before or within five years after the first publication of the copyrighted work. 17 U.S.C. § 410(c). For each copyrighted work, Plaintiffs provide the copyright registrant, the copyright registration number, and the date of the copyright's registration. (Doc. 1-2, pp. 1–4.)[10] Plaintiffs also allege that they have "timely obtained Certificates of Copyright Registration for their Copyrighted Works." (Doc. 1, ¶ 22.) Therefore, the court finds they properly plead the first element of their copyright infringement claim. *See Adlife Mktg.*, 708 F. Supp. 3d at 574 ("A review of the cited material, particularly the Amended Complaint and attached

---

[10] Plaintiffs also proffered the copyright registration certificates for the copyrighted works by attaching the certificates to their motion for default judgment. (Doc. 22-2, pp. 24–194.)

Exhibits, shows that the names of the copyrighted material, the registration numbers and date of the copyrights, are provided. Thus, the Court concludes that Plaintiff has shown that he owns the copyrights to the Works.").

Plaintiffs also plead the second element of their copyright infringement claim. That element contains two components: "(a) actual copying and (b) material appropriation." *Grondin v. Fanatics, Inc.*, No. 23-2149, 2024 WL 5231194, at *1 (3d Cir. Dec. 27, 2024) (citing *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018)). Plaintiffs plead actual copying because they allege that Weibley makes direct copies of the copyrighted works available to subscribers on the infringing services. (*See* Doc. 1, ¶¶ 47, 57); *Grondin*, 2024 WL 5231194, at *1 ("Plaintiffs can prove actual copying . . . directly (*e.g.*, with 'smoking gun' evidence of the defendant cutting-and-pasting the copyrighted work) . . . .") (citing *Tanksley*, 902 F.3d at 173). They include, in their complaint, screen captures of their copyrighted works playing via the infringing services. (Doc. 1, ¶ 52.)

Material appropriation asks whether "a lay-observer would believe that the copying was of protectible aspects of the copyrighted work." *Tanksley*, 902 F.3d at 174 (quoting *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 562 (3d Cir. 2002)) (internal quotation marks omitted). Plaintiffs satisfy this component of the second element because, again, they allege that that Weibley simply took the copyrighted works and provided them without alteration to the

infringing services subscribers, thus violating Plaintiffs' exclusive right to reproduce, distribute, and publicly perform the copyrighted works.  17 U.S.C. § 106(1)–(4).

The complaint specifically alleges that Weibley and Defendants "publicly perform Plaintiffs' Copyrighted Works . . . by transmitting performances of the Copyrighted Works over the internet to subscribers of the Infringing Services." (Doc. 1, ¶ 58.)  And the complaint contains several still images pulled from screenings of the copyrighted works on the infringing services.  (*Id.* ¶ 52.) Plaintiffs allege the copyrighted works themselves are streamed on the infringing services, so Plaintiffs adequately allege that Weibley has copied the original elements of those works.  *See Tanksley*, 902 F.3d at 175 (explaining the substantial similarity analysis).  The court finds Plaintiffs have adequately pleaded the material appropriation component of the second element of their claim and have therefore stated a prima facie claim of copyright infringement.  *See Feist*, 499 U.S. at 361; *Strike 3 Holdings, LLC v. Doe*, No. 20-5122, 2022 WL 952728, at *3 (E.D. Pa. Mar. 30, 2022) ("Plaintiff has also alleged that Defendant copied constituent elements of those works when Defendant downloaded, reproduced, and distributed Plaintiff's works through the BitTorrent protocol.") (internal quotation marks and citation omitted).

## 2. Contributory Copyright Infringement

Plaintiffs also bring a claim of contributory copyright infringement against Defendants.  (Doc. 1, ¶¶ 66–77.)  To plead a contributory copyright infringement claim, a plaintiff must allege: "(1) a third party directly infringed the plaintiff's copyright; (2) the defendant knew that the third party was directly infringing; and (3) the defendant materially contributed to or induced the infringement."  *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 387 (3d Cir. 2016) (first quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); and then quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007), *cert. denied sub nom Stemtech Intern., Inc. v. Leonard*, 583 U.S. 114, 138 S. Ct. 975 (2018) (Mem.).[11]  "The provider of a service is contributorily liable for the user's infringement only if it intended that the provided service be used for infringement . . . A provider induces infringement if it actively encourages infringement through specific acts."  *Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. ----, 146 S. Ct. 959, 967 (2026) (first citing *Metro-Goldwyn-Mayer Studios*

---

[11] In *Cox Communications, Inc. v. Sony Music Entertainment*, the Supreme Court of the United States appeared to describe contributory copyright infringement as a two-element claim; "The provider of a service is contributorily liable for a user's infringement if it intended its service to be used for infringement."  607 U.S. ----, 146 S. Ct. 959, 964 (2026).  The court reiterated that a provider's "mere knowledge" that subscribers will use a service to infringe copyrights does not establish the provider's "required intent to infringe."  *Id.* at 968.  Here, the court includes the knowledge element set forth in *Leonard*, 834 F.3d at 387, in its analysis, but it does not find that Weibley's knowledge of his subscribers' infringement, alone, establishes his intent to contribute to or induce the infringement.

15

*Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); then citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 440–41 (1984); and then citing *Grokster*, 545 U.S. at 942 (Ginsburg, J. concurring)).  In other words, "[t]he intent required for contributory liability can be shown only if the party induced the infringement or the provided service is tailored to that infringement."  *Id.*

Plaintiffs allege that the subscribers to the infringing services infringed their copyrights by reproducing and publicly performing the copyrighted works by streaming them.  (Doc. 1 ¶ 68.)  They allege Weibley knew about this infringement because Plaintiffs told Weibley it was happening.  (*Id.*)  And they allege Weibley facilitated his subscribers' infringement by operating the infringing services and "supplying the IPTV content . . . ."  (*Id.* at 69.)

Plaintiffs satisfy the first element by alleging that the subscribers—the third party here—streamed the copyrighted works from the infringing services to their computers, thus making copies of the copyrighted works on their computers and potentially publicly performing them.  *See Amazon Content Servs. LLC v. DeBarr*, 793 F. Supp. 3d 1242, 1252 (C.D. Cal. 2025) ("Plaintiffs allege that the third-party subscribers . . . directly infringed upon Plaintiffs' valid copyrighted works insofar as they illegally streamed the works and/or uploaded them to the internet . . . This conduct infringes Plaintiffs' exclusive rights under the Copyright Act to reproduce and publicly perform their copyrighted works.")  (citing 17 U.S.C. § 106(1), (4)

16

(quoting *ABC, Inc. v. Aereo, Inc.*, 573 U.S. 431, 442 (2014)); *see also Cox*, 146 S. Ct. at 965 ("Today, anyone with an Internet connection and easily obtained software can upload digital copies of copyrighted music and make them available for others to down-load. This practice often infringes the owners' exclusive rights to copy and distribute their works. [17 U.S.C.] §§ 106(1), (3).")

Plaintiffs satisfy the second element because they allege Weibley knew his subscribers were infringing Plaintiffs' copyrights.  (*See* Doc. 1, ¶¶ 42–43.) Plaintiffs contacted Weibley multiple times about the infringing services.  (*Id.*) Weibley responded to one of these notices, his attorney corresponded with Plaintiffs, and Weibley later moved the infringing services to a different domain. (*Id.* ¶¶ 42–45.)  The court finds that Weibley knew of his subscribers' alleged infringement because he and his attorney responded to Plaintiffs' warnings.  *See Bodyguard Prods., Inc. v. RCN Telecom Servs., LLC*, No. 3:21-cv-15310, 2022 WL 6750322, at *8 (D.N.J. Oct. 11, 2022) (finding that the defendants had knowledge of copyright infringement by third parties because they were notified of the infringement by the plaintiffs' investigator and their attorney).

Finally, Plaintiffs must plead that Weibley intended to materially contribute to, or induce, the subscribers' infringement.  *Leonard*, 834 F.3d at 387.  They must establish that Weibley either induced the infringement or provided a service tailored to the infringement.  *Cox*, 146 S. Ct. at 967.  A service provider induces

17

infringement if it "actively encourages infringement through specific acts." *Id.* (citing *Grokster*, 545 U.S. at 942 (Ginsburg, J. concurring)).  A service is "tailored to infringement" if it cannot be used in a substantially non-infringing way.  *Id.* (quoting *Grokster*, 545 U.S. at 942 (Ginsburg, J. concurring)).

Plaintiffs allege that "Defendants configure and promote the use of the Infringing Services to connect subscribers to unauthorized streams of Plaintiffs' Copyrighted Works."  (Doc. 1, ¶ 69.)  Weibley "offer[s] for sale thousands of live television channels, movies, and television series containing Copyrighted Works that can only be lawfully accessed through a limited number of legitimate services, in specific geographic regions, and in specific content packages," and sell access to streams of the copyrighted works despite knowing these restrictions.  (*Id.* ¶ 68.)[12] Moreover, Plaintiffs allege Weibley attempted to hide the purpose of the infringing services subscribers' payments, and after Plaintiffs contacted him about Defendants' infringement, he simply changed the infringing services' domain.  (*Id.* ¶¶ 38, 44–45.)  And he charges subscription fees "well below what consumers would otherwise pay to access [the copyrighted works] through legitimately licensed distribution platforms."  (*Id.* ¶ 8.)

---

[12] Plaintiffs also allege that if Defendants "transferred the Infringing Services and/or Infringing Domains to third parties," Defendants "materially contributed to the infringement of those third parties through their illicit transfer" and contributed to that infringement by "shielding the identities of Does from Plaintiffs."  (Doc. 1, ¶ 70.)

Plaintiffs sufficiently plead that Weibley, by offering the copyrighted works to subscribers via the infringing services, encouraged infringement of Plaintiffs' copyrights through specific acts. *See Cox*, 146 S. Ct. at 967. In *Cox*, the Supreme Court held that the copyright holder did not establish inducement because it did not provide evidence of the alleged infringer's promotion, marketing, or intention to promote infringement of the holder's copyright. *Id.* at 968 (quoting *Grokster*, 545 U.S. at 926, 930). Moreover, the court recognized that the alleged infringer "repeatedly discouraged copyright infringement by sending warnings, suspending services, and terminating accounts." *Id.*

Here, Plaintiffs allege that Weibley and the other defendants provided cheap, unauthorized access to Plaintiffs' copyrighted works and attempted to conceal that access. (Doc. 1, ¶¶ 8, 38, 44–45, 68–69.) Moreover, they specifically allege that Defendants intentionally and knowingly induced the third parties' infringement of their copyrights. (*Id.* ¶ 72.) Therefore, the court finds that Plaintiffs have adequately pleaded a claim of contributory copyright infringement. *See Amazon*, 793 F. Supp. 3d at 1253 ("By operating [a copyright-infringing IPTV service's] domains and supplying subscribers with unauthorized access to Plaintiffs' copyrighted works, Defendants have facilitated, encouraged, and enabled the direct infringement of Plaintiffs' copyrighted works.")

19

### 3. Inducement of Copyright Infringement

Finally, Plaintiffs bring an inducement of copyright infringement claim against Defendants.  (Doc. 1, ¶¶ 78–86.)   Plaintiffs must allege "(1) the distribution of a device or product[;] (2) acts of infringement[;] (3) an object of promoting its use to infringe copyright[;] and (4) causation" to state an inducement of copyright infringement claim.  *Live Face on Web, LLC v. The Control Grp. Media Co., Inc.*, 150 F. Supp. 3d 489, 500 (E.D. Pa. 2015) (quoting *Columbia Pictures Indus. v. Gary Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013) (setting forth the four-element test derived from the Supreme Court's opinion in *Grokster*, 545 U.S. at 936–37)).[13]

As to the first element, Plaintiffs appropriately allege that Weibley distributed the infringing services, the "product[s]," to the infringing services' subscribers.  (Doc. 1, ¶ 79); *Live Face*, 150 F. Supp. 3d at 500; *Amazon*, 793 F. Supp. 3d at 1253 ("Defendants distributed and sold subscriptions to [a service that provides unauthorized streaming of copyrighted works], which constitutes 'the distribution of a device or product.'") (quoting *Columbia Pictures,* 710 F.3d at 1033); *Cox*, 146 S.Ct. 967 ("[I]n *Grokster*, [545 U.S. at 941,] we held that a jury

---

[13] Plaintiffs do not cite, and the court is not aware of any Third Circuit precedent recognizing the type of stand-alone inducement of copyright infringement claim recognized in *Grokster*, 545 U.S. at 936–37, and *Columbia Pictures*, 710 F.3d at 1032.  Nonetheless, even if the Third Circuit construes the elements of that type of claim differently than the court does in the instant merits analysis, Plaintiffs' alleged damages would remain the same.

could find two file-sharing software companies liable for inducement.")  Plaintiffs also satisfy the second element because, as explained above, third parties infringed their copyrights by streaming the copyrighted works from the infringing services. (Doc. 1 ¶ 68.)

A plaintiff must identify affirmative steps a defendant took to encourage direct copyright infringement to satisfy the third element.  *Cox*, 146 S. Ct. at 967; *Live Face*, 150 F. Supp. 3d at 500 (quoting *Grokster*, 545 U.S. at 935); *see also Columbia Pictures*, 710 F.3d at 1034 (explaining that an inducement plaintiff may demonstrate a defendant's objective of promoting a product's use to infringe copyright by showing that they took affirmative steps to foster infringement). Here, Plaintiffs allege that Weibley supplied and promoted the infringing services, which "has the singular function of connecting Defendants' customers to unauthorized online sources that copy and stream Plaintiffs' Copyrighted Works," and, as the court addressed in analyzing Plaintiffs' contributory copyright infringement claim, that Weibley "actively induc[ed], encourage[ed], and promot[ed] the use of the Infringing Services for copyright infringement."  (*Id.* ¶ 79.)

Moreover, Weibley actively advertised the infringing services' capabilities and posted customer reviews that described the "movies" and "latest tv shows" available on the beastmodebuilds.com domain.  (*Id.* ¶¶ 34–35); *see Grokster*, 545

21

U.S. at 935 (explaining that advertising the infringing capabilities of an infringing service provided evidence of an "unlawful purpose").  And Weibley sought to fulfill a demand for the infringing streaming of the copyrighted works by moving the infringing service to a new domain after pressure from Plaintiffs.  (Doc. 1, ¶¶ 44–45); *see Warner Bros. Ent. v. Tusa*, No. 2:21-cv-05456, 2021 WL 6104399, at *5 (C.D. Cal. Oct. 25, 2021) (holding that a defendant in an inducement of copyright infringement action demonstrated an intent to satisfy a source of demand for copyright infringement by "rebranding and relaunching on infringing services") (quoting *Grokster*, 545 U.S. at 939).  Each of these allegations supports the conclusion that Weibley intended to promote the use of the infringing services to infringe Plaintiffs' copyrights, so the court finds Plaintiffs have adequately pleaded the third element.  *Live Face*, 150 F. Supp. 3d at 500.

The fourth and final element of an inducement of copyright infringement claim requires the plaintiff to establish that the defendant's actions caused a third-party's infringement of the plaintiff's copyright.  *Id.*  The Ninth Circuit Court of Appeals described this element as follows; "[I]f one provides a service that could be used to infringe copyrights, with the manifested intent that the service actually be used in that manner, that person is liable for the infringement that occurs through the use of the service."  *Columbia Pictures*, 710 F.3d at 1037 (citing *Grokster*, 545 U.S. at 937).  Plaintiffs allege that Weibley intentionally promoted

the infringing services and encouraged his subscribers to access the copyrighted

works without authorization, and they allege those subscribers went on to infringe

Plaintiffs' copyrights by accessing the copyrighted works through the infringing

systems.  (*See* Doc. 1, ¶ 79.)  The court finds Plaintiffs satisfy the causation prong

and adequately allege an inducement of copyright infringement claim against

Weibley.  *Live Face*, 150 F. Supp. 3d at 500; *see Amazon*, 793 F. Supp. 3d at 1253

("Defendants distributed and promoted [the product at issue] with the clear intent

that subscribers would publicly perform Plaintiffs' copyrighted works without

authorization, and 'infringing conduct predictably followed.'") (quoting *Tusa*,

2021 WL 6104399, at *5).

### C. The Court Will Grant Plaintiffs the Relief they Request.

Plaintiffs' motion for default judgment requests four forms of relief: (1)

maximum statutory damages for willful infringement of each of the 60 copyrighted

works totaling $9,000,000; (2) attorneys' fees; (3) post-judgment interest; and (4)

an entry of permanent injunction.  (Doc. 22, p. 2.)  The court addresses each in

turn.

### 1. Statutory Damages

Plaintiffs seek $9,000,000 in statutory damages pursuant to 17 U.S.C. §

504(c)(1)–(2).  (Doc. 23, p. 22.)  A copyright owner may recover:

> [S]tatutory damages for all infringements involved in the action, with
> respect to any one work, for which any one infringer is liable

> individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1).  When the copyright owner proves and the court finds that the defendant infringed the copyright willfully, the statute raises the maximum statutory damages sum to $150,000.  *Id.* § 504(c)(2).

The availability of statutory damages depends on the timing of the infringement and when the plaintiff registered their copyright.  *Parry v. URBN US Retail LLC*, 809 F. Supp. 3d 255, 262 (E.D. Pa. 2025) (discussing 17 U.S.C. § 412).  "[F]or a plaintiff to recover statutory damages, the copyrighted work must have been registered prior to commencement of the infringement, unless the registration is made within three months after first publication of the work."  *Id.* (citing *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699 (9th Cir. 2008)).  Put differently, a plaintiff may not recover statutory damages or attorneys' fees for any infringement of a copyright of an unpublished work that began before the effective date of the unpublished work's copyright registration.  17 U.S.C. § 412(1).  Nor may a plaintiff recover those types of damages for infringement of the copyright of a published work that began after the first publication of the work but before the effective date of its copyright registration unless the copyright holder registers the copyright three months after the first publication of the work.  *Id.* § 412(2).

24

Plaintiffs allege that Weibley's infringement of the copyrighted works is ongoing, Doc. 1, ¶¶ 10, 60, and provide the individual copyright registration dates of each copyrighted work, Doc. 1-2, pp. 1–4. They allege that Weibley's infringement of their copyrights is ongoing and postdates the registration of those copyrights, so the court finds that Section 412 does not bar their claims for statutory damages and attorneys' fees against Weibley.[14]

The court has wide discretion to determine statutory damages. *Adlife*, 708 F. Supp. 3d at 577 (first citing 17 U.S.C. § 504(c); and then citing *F.W. Woolworth Co. v. Contemp. Arts, Inc.*, 344 U.S. 228, 231–32 (1952)). "Statutory damages serve the dual purpose of punishing and deterring the infringer while compensating the copyright holder for the infringement." *Watson Music Grp., LLC v. FlavorGod LLC*, No. 24-10582, 2025 WL 2474596, at *5 (D.N.J. Aug. 28, 2025) (quoting *Malibu Media, LLC v. Tsao*, No. 15-6672, 2016 WL 3450815, at *4 (D.N.J. June 20, 2016)).

Courts in the Third Circuit often examine the following four factors when calculating statutory damages: "(1) expenses saved and profits reaped by the infringer; (2) revenues lost by the plaintiff; (3) the strong public interest in insuring

---

[14] The court also finds that, based on the list of copyrighted works and the registration certificates Plaintiffs attached to their brief in support of default, Doc. 1-2, pp. 1–4; Doc. 22-2, pp. 24–194, the works are distinct, so the court finds that Plaintiffs present 60 infringed works. *See* 17 U.S.C. § 504(c); *Strike 3 Holdings, LLC v. Doe*, No. 20-5122, 2022 WL 952728, at *4–6 (E.D. Pa. Mar. 30, 2022).

the integrity of the copyright laws; and (4) whether the infringement was willful and knowing or innocent and accidental." *Broad. Music, Inc. v. George Moore Enters., Inc.*, 184 F. Supp. 3d at 171 (quoting *Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 544 (E.D. Pa. 2008)); *BGSD, Inc. v. SpazeUp, LLC*, No. 5:23-CV-4855, 2024 WL 1619279, at *7 (E.D. Pa. Apr. 15, 2024) (quoting *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F. Supp. 458, 465 (E.D. Pa. 1987)).  The court considers the facts alleged in the complaint to calculate statutory damages when the plaintiff seeks damages above the minimum. *BGSD, Inc.*, 2024 WL 1619279, at *7 (citing *Broad. Music, Inc.*, 555 F. Supp. 2d at 544–45).  As for willfulness, courts in the Third Circuit have recognized that a defendant's infringement may be considered willful when the defendant defaults, *Adlife*, 708 F. Supp. 3d at 567 (quoting *Malibu Media, LLC v. Flanagan*, No. 2:13-CV-5890, 2014 WL 2957701, at *3 (E.D. Pa. July 1, 2014)), or when the defendant continues to infringe on a copyright despite the plaintiff's repeated objections, *Broadcast Music, Inc. v. 3817 Pacific LLC*, No. 23-CV-22782, 2024 WL 3451885, at *7 (D.N.J. July 18, 2024).

Plaintiffs argue that the court should award them $9,000,000 in statutory damages—that is, $150,000 for each of the 60 copyrighted works—for several reasons.  (Doc. 23, pp. 22–26.)  First, they claim Weibley acted willfully, so the court should impose the statutory maximum amount of damages.  (*Id.* at 23–24.)

26

Second, they argue that their list of 60 copyrighted works is merely a representative sample of the content Weibley offered via the infringing services; he in fact infringed many more copyrights than those included in the representative list. (*Id.* at 24.)  Third, they argue that the statutory damages award they seek is proportional to the harm Weibley inflicted, because he likely infringed many more copyrights beyond those included in the representative sample of 60 works, his infringement diminished the value of their copyrights, he deprived Plaintiffs of their control over their copyrighted material, and he undermined the legitimate streaming services market.  (*Id.* at 25–26.)

The court cannot accurately assess Weibley's profits and savings because he has not defended this action.  Nor can the court accurately assess Plaintiffs' lost revenues because, although one of the declarations they attach to their motion for default judgment describes their normal distribution and licensing agreements as "heavily negotiated and complex," they do not specify the licensing fees they lost due to Weibley's conduct.  (Doc. 22-3, ¶¶ 19–20.)

Nonetheless, the court will grant Plaintiffs' request for $9,000,000 in statutory damages for three reasons.  First, enforcing copyright protections serves the public interest.  *Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) (quoting *Klitzner Indus., Inc. v. H. K. James & Co.*, 535 F. Supp. 1249, 1259 (E.D. Pa. 1982)), *abrogation on other grounds recognized in TD*

*Bank N.A. v. Hill*, 928 F.3d 259, 278–79 (3d Cir. 2019).  Second, Plaintiffs provide only a representative sample of copyrights Weibley infringed; they claim he infringed many more.  (Doc. 1, ¶ 47); *Amazon*, 793 F. Supp. 3d at 1254 (noting, in awarding statutory damages, that Plaintiffs provided only a representative list of infringed copyrights and that a "complete accounting" of the defendants' infringing would include many more).

Third and finally, the court finds that Weibley willfully infringed Plaintiffs' copyrights, so awarding the enhanced maximum for each infringed work is appropriate.  17 U.S.C. § 504(c)(2).  Multiple facts support this conclusion.  First, Weibley did not defend this action.  *Adlife*, 708 F. Supp. 3d at 577 (recognizing that courts in the Third Circuit have held that copyright infringement may be considered willful when a defendant defaults) (quoting *Malibu Media, LLC* v. *Flanagan*, 2014 WL 2957701, at \*3).  Second, Weibley continued to operate the infringing services even after Plaintiffs demanded that he stop.  (Doc. 1, ¶¶ 43–44.)  Third, after Plaintiffs spoke with Weibley and his attorney, Weibley simply moved the infringing services to a new domain.  (*Id.*)

Upholding copyright protections supports the public interest, and statutory damages are meant to both compensate the plaintiff and deter future infringement.  *Adlife*, 708 F. Supp. 3d at 577 (recognizing that statutory damages are meant to compensate copyright holders while deterring infringers) (quoting *Schiffer Publ'g,*

28

*Ltd. v. Chronicle Books, LLC*, No. 03-4962, 2005 WL 67077, at *4 (E.D. Pa. Jan. 11, 2005)).  Therefore, the court will award Plaintiffs statutory damages of $150,000 per copyrighted work for a total of $9,000,000.

### 2. Attorneys' Fees

The court may award reasonable attorneys' fees to the prevailing party in a copyright infringement action.  17 U.S.C. § 505.  The court's discretion is "subject to the same pre-registration requirement as statutory damages." *Michael Grecco Prods., Inc. v. Al Día Newspaper, Inc.*, No. 21-4907, 2023 WL 1971164, at *3 (E.D. Pa. Feb. 13, 2023) (first citing 17 U.S.C. §§ 412, 505; and then citing *All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 629 (S.D.N.Y. 2011)).  The court must make an individualized assessment of the reasonableness of the requested attorneys' fees, and it considers such factors as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence," with "extra" weight on the "objective unreasonableness factor," in making this assessment.  *Leonard*, 834 F.3d at 403 (first quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994); and then quoting *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016)).

Weibley willfully infringed on Plaintiffs' copyrights and then failed to defend this action, so the court finds awarding reasonable attorneys' fees is

appropriate.  *See EETHO Brands, Inc. v. Common Cents Distributors LLC*, No. 2:24-CV-08962, 2025 WL 2044421, at *9 (D.N.J. July 21, 2025).  Plaintiffs request $63,241 in attorneys' fees.  (Doc. 22-4, p. 4.)  Plaintiffs submit the declaration of Scott R. Commerson, a partner at the law firm Davis Wright Tremaine LLP who entered his appearance on behalf of Plaintiffs in this case.  (Doc. 22-2.)  Therein, Attorney Commerson provides a detailed log of his firm's work on this matter and notes that his firm discounted its hourly rates in calculating this fee request.  (*Id.* at 4–18.)

The court has reviewed Attorney Commerson's declaration and finds that the attorneys' fees Plaintiffs request are reasonable.  Therefore, the court will award Plaintiffs $63,241.00 in attorneys' fees.

### 3.  Post-Judgment Interest

Plaintiffs request post-judgment interest pursuant to 28 U.S.C. § 1961(a). The court awards post-judgment interest because it is mandatory under the statute. 28 U.S.C. § 1961(a); *see EETHO Brands*, 2025 WL 2044421, at *9 (citing *Broad. Music, Inc.*, 2024 WL 3451885, at *8).

### 4.  Permanent Injunction

The court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17

U.S.C. § 502(a).  To decide whether to grant a permanent injunction pursuant to this provision, the court must consider whether:

> (1) [T]he moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest.

*Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001) (citing *ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n.2–3 (3d Cir.1996)); *see Adlife*, 708 F. Supp. 3d at 575 (quoting *Shields*, 254 F.3d at 482); *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).  "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course."  *Free Speech Coal., Inc. v. Att'y Gen. of the U.S.*, 974 F.3d 408, 430 (3d Cir. 2020) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)).  On one hand, when the "defendant does not respond and the plaintiff cannot quantify its damages," and when past infringement suggest infringement will continue, the four preliminary injunction factors may weigh in favor of granting injunctive relief.  *Grant Heilman Photography, Inc. v. Gallagher*, No. 3:23-CV-1129, 2024 WL 666147, at *5 (M.D. Pa. Feb. 16, 2024) (quoting *Freddy S.p.A. v. Kalai*, No. 20-628, 2022 WL 1411690, at *3 (D. Del. Apr. 28, 2022), *report and recommendation adopted*, No. 20-628, 2022 WL 2915765 (D. Del. July 25, 2022)) (collecting cases).  On the

other, the court may be "cautious" to enter a permanent injunction in the default judgment context without the benefit of the defendant's opposition. *Victory's Dawn, Inc. v. Clemons*, No. 21-9744, 2022 WL 3402491, at *5 (D.N.J. Aug. 12, 2022).

Here, Plaintiffs request that the court enjoin Weibley, "his officers, agents, servants, employees and attorneys, and other persons who are acting in active concert or participation with him who receive actual notice of this injunction," from:

a) [O]perating Shrugs, Zing, Beast Mode Live, BTV, Viking Media, and GreenWing Media (together, "Infringing Services"), or any other unlicensed streaming service currently operated under their control or to which they are providing any material assistance.

b) [O]perating any website, system, software, or service that is substantially similar to the Infringing Services or other services, by any brand or name, that facilitate access to the Copyrighted Works, and other works in which Plaintiffs validly own or control the copyrights or exclusive rights, without authorization.

c) [I]nfringing, whether directly or secondarily, any of Plaintiffs' Copyrighted Works, and other works for which Plaintiffs validly own or control the copyrights or exclusive rights, by any means, including by publicly performing, reproducing, or otherwise infringing the Copyrighted Works, or other copyright material owned or controlled by Plaintiff, in any manner (including by materially contributing to or intentionally inducing the infringement of), any of Plaintiffs' exclusive rights under the Copyright Act.

d) [D]irectly or indirectly taking any additional steps to release publicly, distribute, transfer, or give any source code, other technology, domain names, trademarks, brands, assets, or goodwill in any way related to the Infringing Services.

e) [K]nowingly taking any action for the purpose, or that has the effect of, circumventing the requirements of [the] Injunction.

(Doc. 22-4, pp. 5–6.)  Plaintiffs also seek an injunction against third parties, and

request that the court order:

a) [T]hat any domain name registrars and registries for beastmodebuilds.com and vonwik.com (together with any other domains associated with Defendant's infringing conduct, "Infringing Domains"), as well as all other persons in active concert or participation with Defendant who receive notice of this Injunction, are ordered to disable public access to the Infringing Domains; to prevent the Infringing Domains from being modified, sold, transferred to another owner, or deleted; and to take all reasonable steps to transfer ownership of the Infringing Domains to a registrar to be appointed by Plaintiffs to re-register the domain names in Plaintiffs' names, or the name(s) of their designee(s), and under Plaintiffs' ownership.

b) [T]hat the hosting service providers of the websites associated with the Infringing Domains are ordered to suspend any services to such websites and place an administrative lock on the websites to prevent third parties from accessing and downloading the websites' content or transferring the websites' contents to another domain name or hosting service.

c) [T]hat Plaintiffs' counsel may complete service of process on Defendant and any officers, agents, servants, employees, attorneys and persons who are acting in active concert or participation with Defendant of this Order and Injunction by Overnight Mail. This Injunction shall bind Defendant and all of his agents, servants, employees, and all persons in active concert or participation or in privity with Defendant who receive actual notice of this Injunction.

(*Id.* at 6–7.)  Plaintiffs argue that they are entitled to this injunctive relief for

several reasons.  (Doc. 23, pp. 28–32.)  First, they claim that Weibley's actions

have irreparably harmed them by "undermining the value of the Copyrighted

33

Works, damaging Plaintiffs' standing in the marketplace, interfering with Plaintiffs' relationships and goodwill with licensees, and threatening customer confusion." (*Id.* at 28.) Second, they claim that Weibley's continued infringement of their copyrights warrants a permanent injunction. (*Id.*) Weibley's past and continued infringement, Plaintiffs argue, make a permanent injunction necessary. (*Id.* at 28–29.) Third, they argue monetary damages would neither protect their copyrights from future infringement nor compensate them for specific harm they have suffered, such as loss of control over the copyrighted works and damage to their business goodwill. (*Id.* at 29.) And they note that Weibley's failure to engage in this action indicates that he will likely not satisfy a damages award. (*Id.*) Fourth, they claim an injunction is equitable. (*Id.* at 29–30.) Weibley will not be harmed by an injunction that simply prevents him from infringing Plaintiffs' copyrights, whereas Plaintiffs would continue to suffer the harms of infringement without a permanent injunction. (*Id.*) Fifth and finally, Plaintiffs note that the public interest is served by enforcing copyright protections. (*Id.*)

Moreover, Plaintiffs claim the broad injunction they request in their proposed order is appropriate. (*Id.* at 30–31.) They argue that "Courts routinely order the transfer of domains associated with infringing activities" and that courts have also ordered hosting providers who receive notice of an injunction to suspend

services to domains and prevent the content on those domains from being transferred.  (*Id.* at 31–32.)

The court finds Plaintiffs' requested injunction is warranted after considering the relevant factors.  *TD Bank*, 928 F.3d at 278.  First, as explained above, Plaintiffs have adequately pleaded each of the three claims they raise against Weibley, and Weibley's default prevents the court from fully adjudicating this case on the merits, so Plaintiffs' success on the merits of their claims is likely.  *See Adlife*, 708 F. Supp. 3d at 575 (finding that Defendant's default prevented the court from deciding the case on the merits and that adequately pleading a copyright infringement claim satisfied the success on the merits prong); *BGSD, Inc.*, 2024 WL 1619279, at *6 ("The substantive analysis of BGSD's claims as outlined above satisfies the first element.").

Second, the court finds Plaintiffs have demonstrated that they will face irreparable harm if the court does not issue their requested injunction.  The facts alleged in the complaint indicate that Weibley is likely to continue infringing Plaintiffs' copyrights if the court does not grant the injunctive relief Plaintiffs' request.  Specifically, Weibley's decision to continue operating the infringing services despite Plaintiffs' notices and his deliberate efforts to conceal his infringing activity suggest his infringement will continue.  (*See* Doc. 1, ¶¶ 38, 42–46.)  Plaintiffs' request for injunctive relief against third parties is also necessary to

prevent irreparable harm because Weibley's default demonstrates that he is unlikely to heed the court's orders and may simply transfer the infringing services to a third domain.  (*Id.*)

Continued infringement alone, however, does not establish irreparable harm. *T.D. Bank*, 928 F.3d at 280.  Here, Plaintiffs argue that if they are not afforded injunctive relief, they are likely to continue suffering the harms of continued infringement, such as a detriment to the value of their copyrighted works, a loss of control over the copyrighted works, damages to their business goodwill, and harm to the general marketplace for creative works.  (*See* Doc. 23, p. 29).  In a declaration submitted in support of Plaintiffs' motion for default judgment, Executive Vice President and Chief Content Protection Officer for the Motion Picture Association, Inc. Larissa L. Knapp explains that Weibley's infringement also causes irreparable harm by: "(a) threatening streaming businesses, which in turn, harms Plaintiffs and their relationship with authorized distributors; (b) increasing the demand for infringing content by accustoming consumers to low-cost, infringing services; and (c) hampering Plaintiffs' anti-piracy efforts and exposing them to the risk of further piracy."  (Doc. 22-3, pp. 9–10.)

These harms extend beyond mere economic losses and threaten Plaintiffs' industry, and their ability to do business, rendering other remedies at law inadequate.  *See Tang v. Longyan Blue Whale Info. Tech. Co.*, No. 2:25-CV-01850,

2026 WL 73759, at *2 (W.D. Pa. Jan. 9, 2026) (finding that harms such as undercutting the price of the plaintiff's original works and reducing the visibility of her products online constituted irreparable harm that justified a preliminary injunction in part because they "ero[ded] . . . the legitimate marketplace in which she operates"); *Chen v. Adediy*, No. 2:24-CV-1516, 2025 WL 624450, at *4 (W.D. Pa. Feb. 26, 2025) (finding that the risk of irreparable harm to plaintiff's "reputation, value, and goodwill" posed by copyright infringement could not be remedied at law); *See also Ottomanson, Inc. v. UCAI, LLC*, No. 19-8775, 2020 WL 205945, at *4 (D.N.J. Jan. 10, 2020) (recognizing that irreparable harm is no longer presumed in copyright cases but granting a permanent injunction against an infringer in the "specialized context of a default judgment" because the plaintiff could not quantify its past or future damages). Accordingly, the court finds the second factor weighs in favor of injunctive relief.

Third, enjoining Weibley from infringing Plaintiffs' copyrights will not harm Weibley. Based on the uncontested allegations of the complaint, the domains and services the requested injunction would affect are used to unlawfully offer copyright-protected material at a low price. (*See* Doc. 1, ¶¶ 1–53.) Preventing a defendant from continual infringement does not harm the defendant. *See Broad. Music, Inc.*, 2024 WL 3451885, at *7; *Globe Turner, LLC*, 2025 WL 2346883, at *8 ("The third factor favors injunctive relief because the only harm imposed on

37

ConversationPrints is that it is enjoined from infringing on Globe Turner's copyrights, which it is not entitled to do.").

Fourth and finally, the court finds that enforcing copyright protections promotes the public interest. *Apple Comput.*, 714 F.2d at 1255; *Globe Turner, LLC*, 2025 WL 2346883, at \*8 (citing *Apple Comput.*, 714 F.2d at 1255).

After considering these factors, the court finds injunctive relief is appropriate. Accordingly, the court will grant Plaintiffs' request for injunctive relief against Weibley, his agents, and any other individuals who are in active concert or participation with him.

## CONCLUSION

For the reasons explained herein, the court will grant Plaintiffs' motion for default judgment. An order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: June 10, 2026

38